## Julia B. Smith v. Frank J. Smith et al.

### Decided November 25, 1899.

**1. Record of Title—Notice.**

The registry of a deed is notice only to those who claim through or under the grantor by whom the deed was executed.

**2. Same—Record Not Charging Notice.**

A deed recited that one of the vendor's lien notes mentioned therein, specifying money only and drawn to the order of the grantor, was "payable in lot 9, block B914, of Dallas." The grantee in the deed executed to the grantor a bond for title to lot 9, agreeing to take the note, at its maturity, in payment for the lot; and on the back of the bond the grantor indorsed a transfer thereof to his wife which was properly acknowledged, and the bond was duly recorded. After the maturity of the note the grantor (payee therein) executed a release and satisfaction thereof which was duly recorded, and on the faith of such release a mortgagee advanced money on the property conveyed by the deed, taking a lien thereon. Held, that the mortgagee

-was not charged by the record with notice that the note was the property of the wife (it having in fact been transferred to her at the time the bond was transferred), and that the note had not been paid.

### 3. Transfer of Bond for Title and Note.

Where the obligee in a bond for title, by an indorsement on the back thereof, transferred to another "all his right, title, and interest to the property mentioned within," this was not evidence of the transfer of an outstanding note executed by the obligor to the obligee, and which the bond recited as the stipulated price to be paid for the property.

### 4. Notice—Knowledge of Attorney.

An owner of property applied to a loan company for an advance of money thereon, stating certain liens as existing on the property. The company wrote in reply that it would require the statement of some reputable attorney that there were no liens against the property except those mentioned, and that the applicant's statement and collateral was satisfactory; and the applicant thereupon had an attorney, formerly in his employ, and at that time trustee for him in a deed of trust to secure the notes offered as collateral, to give the required certificate or statement. Held, that the loan company could not, on the ground that such attorney was its agent, be charged with notice of yet other liens on the property by reason of the attorney's knowledge thereof, and that evidence to show such knowledge was properly excluded.

### 5. Verdict and Judgment—Adjustment of Equities.

Where the facts were such that the judge was authorized to direct a verdict, as he did, he could, after the verdict and in rendering the judgment, proceed to adjust equities between the parties which the verdict did not include.

APPEAL from Dallas. Tried below before Hon. W. J. J. SMITH.

*Harry P. Lawther,* for appellant.

*M. C. Cullen, Thompson & Thompson,* and *Gano, Gano & Gano,* for appellees.

BOOKHOUT, ASSOCIATE JUSTICE.—Plaintiff brought her suit to the lower court against Frank Smith, for divorce, and against Smith and the other defendants to fix a lien upon certain property in the city of Dallas, which she alleged secured a note for $1500 belonging to her.

On the question of divorce she alleged facts giving the court jurisdiction, and statutory grounds for divorce.

With reference to the note she alleged that it was part of the proceeds arising from the sale of the homestead of Smith and herself, the same being lots 11 and 12, block B914, in the city of Dallas; that said sale was made to one Robert W. Sanders on the 10th day of March, 1895; that the place was valued at $4500, and in part payment therefor Smith and she agreed to take a lot that Sanders owned in the same block, lot 9, block B914, which, clear of incumbrance, was valued at $1500; that there being at the time an incumbrance on said lot 9, Sanders and wife, instead of giving a deed, executed and delivered their bond for title to the same; that it was agreed that Sanders would clear lot 9 of its incumbrance by the time the $1500 note matured; and that then they would convey lot 9 in satisfaction and liquidation of said

$1500 note, as to the principal thereof; that this sale by Smith and her to Sanders, of lots 11 and 12 for $4500, and Sanders' agreement to convey lot 9, clear of incumbrance, in part payment thereof, was one transaction; and that the deed from Smith and her to Sanders and the $1500 note and the other notes described in said deed, and the bond for title to lot 9, executed by Sanders and wife in Smith's favor, were all parts of and evidenced one and the same contract; and that said deed was immediately filed for record in the county clerk's office of Dallas County, where the same was and is duly recorded. That it was provided in said bond for title to lot 9 that said $1500 note "should be accepted and received by said Robert W. Sanders and wife in payment of the purchase price of said property, in lieu of the $1500, the agreed price for said property, it being understood and agreed that the interest or excess over said $1500 note should be paid to said Frank J. Smith; and that it was written in said deed to lots 11 and 12 that the note for $1500 to become due June 1, 1896, is payable in lot 9, block B914;" also, that in said deed of lots 11 and 12 a vendor's lien was expressly retained to secure the payment of said $1500 note, and, as additional security, a deed of trust on said lots was given by Sanders and wife to the defendant, Geo. H. Plowman, trustee, which deed of trust was duly recorded in the county clerk's office of Dallas County, Texas.

Plaintiff further alleged that after the execution and delivery of said $1500 note and said bond for title, by Sanders and wife to Smith, and long before the maturity thereof, to wit, on the 30th day of November, 1895, said Smith gave to her, as her share of said proceeds of said homestead sale, the said $1500 note and the bond for title to lot 9, indorsing in blank and delivering to her the note, and executing and acknowledging a written transfer of said bond for title, and delivering the same with said bond to her; that this was while she and Smith were living together; and that immediately upon her separation from Smith, to wit, upon the 30th day of July, 1896, she notified Robert W. Sanders, the maker of said $1500 note and of the bond for title, and also George H. Plowman, trustee, of the ownership of said note and bond, and on the same day, viz., on the 30th day of July, 1896, she filed said bond for title, together with Smith's assignment thereof to her, for record in the county clerk's office of Dallas County, Texas, where the same was and is duly recorded.

Plaintiff further alleged that after said 30th day of July, 1896, to wit, on the 10th day of September, 1896, said Frank J. Smith, sold and delivered to the said defendant, the United States Investment Company, Limited, twenty vendor's lien notes for $40 each and one for $20 also, being purchase money notes for said lots 11 and 12, and secured by the same vendor's lien and deed of trust as said $1500 note, and executed and delivered to said corporation a written assignment of said notes, and transfer of the lien securing the same; that said Smith also and on the same day, September 10, 1896, executed and delivered to

Robert W. Sanders a release of the lien securing the $1500 note, said release reciting that he, Smith, was the legal and equitable holder and owner of said $1500 note, and that the same was and had been fully paid to him; that on the same day, to wit, on the said 10th day of September, 1896, said Robert W. Sanders executed and delivered to said United States Investment Corporation, Limited, a new note in the sum of $825, in lieu and in renewal of said twenty notes for $40 each and said one note for $20, and executed and delivered to the defendant, Robert Ralston, trustee, a new deed of trust on lots 11 and 12 to secure the same, and on said same day, said Robert W. Sanders and wife executed and delivered to said Frank J. Smith one note for $354.15, and three notes for $531.20 each, in renewal and in lieu of the remaining purchase money notes named in said deed of March 18, 1895, and also at the same time, executed and delivered to said defendant, George H. Plowman, trustee, a second deed of trust on said lots 11 and 12, to secure said last mentioned notes. Plaintiff further alleged that this transaction of September 10, 1896, between the defendants, Smith and the United States Investment Company, Limited, and Robert Ralston and Robert W. Sanders and George H. Plowman, was without her knowledge and consent and in fraud of her rights as the holder and owner of said $1500 note; that on said date she, and not Smith, was the holder and owner of said note; that the same was unpaid and unsatisfied; that Smith had before that time abandoned her and driven her from their home, and they were then living separate and apart, and that Smith had no authority from her to make said release, and did so without her knowledge and consent and for the purpose of defrauding her; that all of said parties, viz., Smith, Robert W. Sanders, the United States Investment Corporation, Limited, Robert Ralston and George H. Plowman, knew that said $1500 note was not paid nor satisfied by the conveyance of lot 9, as provided in said deed and bond for title, nor in any other manner; knew that she, and not Smith, was the owner of said $1500 note, and that she and Smith had separated, and that Smith had no authority from her to execute said release. Plaintiff then set forth that afterwards, to wit, in the month of January, 1897, the said Robert Sanders, without ever having paid off or satisfied said $1500 note, and without ever having performed the conditions of said bond for title by the conveyance of lot 9, free from incumbrance, died intestate, leaving surviving his wife and children, the defendants, Mamie T. and E. S. and Robert T. Sanders, who are in possession of all of said property, viz., lots 11 and 12 and lot 9, block B914; that no administration had ever been had on his estate, and these were the only debts known to exist against the same.

Plaintiff further alleged that afterwards, to wit, in the month of March, 1897, the said defendant, the Mutual Life Insurance Company, of Louisville, Ky., claimed to have made a loan of money to said Frank J. Smith, and, as security for the same, to have taken, as collateral, said one note for $354.15 and said three notes for $531 each, and

she charged that if said insurance company ever made said loan, it did so with full knowledge at the time of all said facts, viz.: (1) That Sanders, the maker of the said four notes taken as collateral, was dead; (2) that Smith, when he executed the release of the $1500 note, in September, 1896, did not own the same, but had transferred and assigned the same to plaintiff, and that he had no authority or power to make said release; (3) that at the time of the execution of the said release by Smith said $1500 note was not satisfied by the conveyance of lot 9, nor paid in any manner whatsoever; (4) that said release was executed without plaintiff's knowledge or consent, and for the purpose of cheating and defrauding her.

Plaintiff further set up that at the time of the original transaction between Smith, herself, and Robert W. Sanders, there was an incumbrance on lot 9 in favor of the Dallas Homestead and Loan Association, and that after the maturity of said $1500 and the default in the payment thereof, and after the breach of the conditions of said bond for title, one John Catto loaned to said Robert Sanders a sum of money, wherewith said Sanders paid off and satisfied his indebtedness to said building association, and that said Catto, by reason thereof, was claiming some lien on said lot 9, block B914.

Plaintiff prayed that all said defendants be cited to answer her petition; for a decree of divorce from said Frank J. Smith; for judgment establishing her ownership to said $1500 note and to said bond for title; for the performance of the covenants in said bond for title, and for the title and possession of said lot 9, block B914, as against the claims of all other defendants; for judgment against the Sanders estate for the full amount due on said $1500 note, with interest and attorney's fees, the same to be satisfied as to the principal sum of $1500 by the judgment of lot 9, as prayed for, the balance to be satisfied by the sale of lots 11 and 12. Plaintiff also prayed for a decree setting aside and canceling said release of said $1500 note executed by Frank J. Smith on September 10, 1896, as against all said defendants, and fixing and establishing the lien securing her $1500 note on lots 11 and 12, equal and co-ordinate to the lien on said lots securing the $825 note owned by the United States Investment Corporation, Limited, and superior to the lien securing the note for $354.15, the three notes for $531.20 each, claimed to be held by the Mutual Life Insurance Company of Louisville, Ky., as collateral, and for general relief.

The United States Investment Company (hereafter called the "Investment Corporation") filed its answer excepting generally and specially, and a general denial, and specially answering, setting up general demurrer, general denial, special pleas and answer, alleging that said investment corporation bought the twenty vendor's lien notes for $40 each, and the one note for $20, as set forth in plaintiff's petition, and took in renewal in lieu thereof the $825 note in good faith, for valuable

consideration and without notice of the claims set up by plaintiff, and that said investment corporation and its agents fully relied on the right of Frank J. Smith to release the lien on lots 11 and 12 securing the note for $1500. Said investment corporation then gave the details of its acquisition of the notes, the renewal of said notes and nonpayment and maturity of said $825 note; alleged that it was the owner and holder of said note, and prayed for judgment for the amount due on the same, with interest and attorney's fees, and for a foreclosure of the lien securing said note on lots 11 and 12 as a first lien, and for an order of sale of said lots for the satisfaction of said judgment.

The Mutual Life Insurance Company of Louisville, Ky. (hereafter called "Insurance Company") answered by general and special exceptions and general denial, and specially, that said company held the four notes made by Robert W. Sanders, dated July 17, 1896, payable to Frank J. Smith or order; one in the sum of $354.15, and three for $531.20, each, and described in her petition, and which the insurance company claimed were liens upon lots 11 and 12, block B914. The defendant, Frank J. Smith, in his answer alleged that lots 11 and 12 had been released from the $1500 note; that he had transferred said four notes to the insurance company for value before maturity, and vouched in the company to defend its title to the said notes and lien securing the same. Upon the merits, the insurance company contended, substantially, that it had acquired from Frank J. Smith said four notes, fully describing them, in good faith, before maturity, for value, in due course of trade, without any notice, actual or constructive, of any of appellant's claims, and under the belief that the $1500 note had been paid off. The company then gave the details of its acquisition of the notes and alleged that they were a lien on said lots 11 and 12 superior to any lien, or supposed lien, securing said $1500 note, which latter lien had been duly released of record by Frank J. Smith, to whom said $1500 note was made payable, long prior to the time the insurance company acquired the four notes.

John Catto answered by general and special exceptions, general denial, and specially that he was the assignee for value of the incumbrance on lot 9 described in plaintiff's petition, formerly held by the Dallas Homestead and Loan Association, and that said incumbrance was a first lien upon said lot 9. All the other defendants filed answers. The court below overruled all exceptions and demurrers, and upon hearing the evidence, of its own motion, withdrew the case from the jury and directed the following verdict: (1) In favor of the United States Investment Corporation, Limited, for the full amount due upon the $825 note, with interest and attorney's fees, and for the foreclosure of a first lien on lots 11 and 12. (2) In favor of the Mutual Life Insurance Company, of Louisville, Ky., for the full amount due on the one note for $354.15 and the three notes for $531.20 each, with interest at 10 per cent and attorney's fees, aggregating $2484.33, and for

the foreclosure of a second lien on lots 11 and 12. (3) In favor of John Catto for a first lien on lot 9, for the sum of $1002.72. (4) In favor of plaintiff, Julia B. Smith, for the title to lot 9, subject to Catto's lien, and for a third lien on lots 11 and 12 for $1002.72 (the amount of the Catto incumbrance on lot 9), with foreclosure thereof. Plaintiff having testified that she was not a resident of Dallas County, her suit for divorce was dismissed, of which action appellant does not here complain.

The court overruled a motion for a new trial and rendered judgment, from which appellant has prosecuted this appeal. The facts appear in the opinion.

Appellant's first assignment of error complains of the action of the court in instructing a verdict in favor of the United States Investment Corporation, Limited, for its debt and a foreclosure of its lien on lots 11 and 12, in block B914, described in the pleadings as the first and superior lien on said lots. Appellant contends that there was record notice of her ownership of the $1500 note and the vendor's lien retained to secure the same.

On March 18, 1895, Frank J. Smith and wife, Julia B. Smith, appellant, conveyed to Robert W. Sanders lots 11 and 12, block B914, for the consideration of $4500, represented by certain notes of even date to said deed, all payable to F. J. Smith or order, fourteen of said notes being for $30 each, and maturing respectively on the first of each month, commencing April 1, 1895; one note for $150 due June 1, 1896, and sixty-four notes of $40 each, maturing respectively on the first of each month, commencing with July, 1896, and one note for $20 due November 1, 1901, all of said notes bearing interest at the rate of 8 per cent per annum, and calling for attorney's fees. The deed recited that the $1500 note was "payable in lot 9, block B914. of Dallas, Texas," and a vendor's lien was retained in the face of said deed to secure the payment of said notes, and as additional security, Sanders executed a deed of trust on said lots to George H. Plowman, trustee. The $1500 note was a vendor's lien note on its face, and payable to Frank J. Smith, or order, and contained no reference whatever to lot 9.

Lots 11 and 12 were acquired by Smith before his marriage, and were his separate property.

On March 19, 1895, Sanders and wife executed a bond for title to Frank J. Smith in the sum of $3000, obligating themselves within fifteen months to convey to Smith lot 9, free of liens, in payment of the sum of $1500, or the principal of the $1500 note which said note, the bond recites, is hereby agreed shall be accepted and received by Robert W. Sanders and wife in payment of the purchase price of said property in lieu of the $1500, the agreed price of said property, it being understood and agreed that the interest or excess over said $1500 shall be paid to said Frank J. Smith.

On November 30, 1895, Smith transferred said bond for title to his

wife, the appellant; the transfer was written on the back of said bond, and is as follows: "For a valuable consideration I hereby assign all my right, title and interest to the property mentioned in the foregoing pages to Julia B. Smith, to be hers, her heirs, and assigns." The bond for title, together with the transfer, was filed for record in the office of the county clerk of Dallas County, July 30, 1896, and recorded. The transfer from Smith to his wife of the bond was not indexed. When the $1500 note fell due, June 1, 1896, Sanders had not paid off the incumbrances on said lot 9. Smith, desiring to raise money on the notes, other than the $1500 note, went to the office of a conveyancer on the 17th day of July, 1896, and got him to prepare six consolidated notes in extension and renewal of the small notes remaining unpaid. These six notes were dated July 17, 1896, maturing respectively April 1, 1897, and one each year thereafter, payable to the order of Frank J. Smith, providing for interest and attorneys's fees, and that in default of payment of either interest or principal all the notes should mature. Smith took the consolidated notes and deed of trust to the office of the investment corporation to negotiate the same. Smith, at the time, also had an abstract of title. This abstract was turned over to the agent of the investment corporation, which agent had the same examined by the attorneys of the corporation, and they reported that the title was good in Sanders, and that the $1500 note was an equal lien against lots 11 and 12, and they required it to be released. It was the corporation's rule to take only first liens, and not equal liens. The agent demanded that certain of the small notes, aggregating the amount proposed to be loaned by him to Smith, should be transferred to the loan company, and a new note executed for the amount of the proposed loan—$825—and the same be made a first lien on the property, lots 11 and 12, and that the $1500 note be released, before he would loan the money. This was done.

Smith released the vendor's lien on lots 11 and 12 for the $1500 note. The small notes, aggregating $825, were transferred to the investment corporation, and a new note for $825 and a deed of trust to secure same were executed by Sanders and dated back to the 17th of July, 1896, the date of the other consolidated notes. Smith, at the time he executed the release of the $1500 note, stated that he was the owner and holder of the same. The deed of trust thus showed the $825 note to be the first lien upon the property.

As stated, the contention of appellant is, that the deed from Smith and wife to Sanders showed that the $1500 note was payable in lot 9, block B914, of Dallas, said deed being dated March 18, 1895, and that on the next day Sanders and wife executed to Frank J. Smith a bond for title binding themselves to convey said lot 9 to Frank J. Smith, and that these are parts of the same transaction and that the bond for title having been assigned and transferred to appellant, the record of these instruments was notice of plaintiff's ownership of the note. The bond for title from Sanders and wife to Frank J. Smith for lot 9 was no part of

the chain of title to lots 11 and 12. The rule is, that the registry of a deed is notice only to those who claim through or under the grantor by whom the deed was executed. White v. McGregor, 92 Texas, 556; Holmes v. Buckner, 67 Texas, 112; Webb, Record of Title, sec. 162.

The title to lot 9 emanates from a different grantor, as well as being for different property. It is outside of the chain of title to lots 11 and 12. Lumpkin v. Adams, 74 Texas, 96; Frank v. Heidenheimer, 84 Texas, 644. It is true that the deed from Smith and wife to Sanders showed a note for $1500, as part of the consideration for such deed, and provided that said note was "payable in lot 9, block B914, of Dallas." This provision in said deed did not prevent the payee in said note from accepting payment thereof in money. The note was payable to Frank J. Smith, and when released was overdue, and the record showed Smith to be the apparent owner of the same. In this condition of the record, Smith executed a release of the lien, and declaring therein that the note had been paid. This release was recorded. The investment corporation, relying upon the faith of the record, made a loan to Smith, and took as security what purported to be, and what the agents of the company believed to be, a first lien on said lots to secure the same. At the trial it was shown that when Smith executed the release he was not in fact the owner of the $1500 note, but that it was owned by Mrs. Smith. The agents of the investment corporation had no actual knowledge of her ownership at the time it made its loan. The record was insufficient to charge the investment corporation with notice of appellant's ownership of the $1500 note when it made its loan. Henderson v. Pilgrim, 22 Texas, 464; Moran v. Wheeler, 87 Texas, 173.

But if the agents of the investment corporation were chargeable with notice of the contents of the bond for title, the appellant would be in no better attitude. An examination of the record of the bond for title would at most have shown a transfer by Smith "of all his right, title, and interest to the property mentioned in the foregoing pages" to the appellant. The property which was the subject matter of this bond for title was lot 9 of block B914. It is true that the bond did make mention of the $1500 note which it recited was the stipulated price agreed to be paid for said property. Appellant contends that the above transfer indorsed upon the bond was a transfer of the $1500 note. We do not so construe the transfer. It was a transfer of the bond, and such title as Smith had to the lot by virtue of the bond. Appellant next contends that if the investment corporation did not have record notice, then it had, through its agents, knowledge of such facts as would put a person of ordinary prudence upon inquiry, and that inquiry with due diligence would have disclosed knowledge of the fact that Mrs. Smith, the appellant, owned the note at the time Smith executed the release for the same. The agent had heard that there was some trouble between Smith and his wife, and had heard that the $1500 note had been in a bank at Pilot Point as collateral for a loan. He is further chargeable with notice of the facts appearing of record in the deed above set out.

The facts proven were not sufficient to raise even a surmise that Smith was not the owner and holder of the note when he executed the release. Such being the condition of the record, the court was authorized to instruct a verdict. Joske v. Irvine, 91 Texas, 574. We overrule the first assignment of error.

In the second assignment of error the appellant complains of the action of the court in instructing a verdict in favor of the insurance company for its debt, with interest, and a foreclosure of its lien on lots 11 and 12, in block B914, subject to the lien of its codefendant, the investment corporation. The insurance company became the holder of one note for $354.15, and the three for $531.20 each, dated July 17, 1896, and secured by a deed of trust upon lots 11 and 12, block B914, of the city of Dallas, as collateral for the loan of $1950 made by said company to Frank J. Smith on the 24th day of March, 1897. Each of these notes recited: "This note is one of six notes of even date herewith, amounting to $2766.88, made for the purpose of taking up and extending the balance due on fourteen vendor's lien notes for $30 each and the 64 vendor's lien notes for $40 each and one for $20, described in deed from Frank J. Smith and wife to Robert W. Sanders, recorded in volume 167, p. 579, Dallas County record of deeds, it being understood that the $1500 remains in statu quo, and is in no way affected thereby." As before stated, the $1500 note was released by Frank J. Smith on the 11th day of September, 1896, which release was duly recorded on the 14th day of September, 1896.

Appellant's contention that there was record notice of her title to the $1500 note at the time Frank J. Smith executed the release is disposed of in our remarks overruling the first assignment of error.

But appellant contends that the insurance company, at the time that it made its loan to Smith and took the Sanders note as collateral therefor, had notice of such facts as to put them upon inquiry which, if duly prosecuted, would have shown that Frank J. Smith had no authority to release the vendor's lien retained to secure the $1500 note. Smith was in the employ of the insurance company, and in February, 1897, he made an application to the company for a loan of money, proposing to transfer these four notes to the company as security for such loan. He represented that he had sold the property which secured the notes for $4500. He also stated that the $1500 note referred to in each of the four notes had been released, and the release had been recorded. On March 17th, Smith wrote the company from Dallas, stating that the investment corporation had a complete abstract of the title of the property, said corporation having purchased the $825 note, and that the attorneys of the investment corporation had made a certificate that the title was all right. On March 18, 1897, the insurance company wrote to Smith to send the notes which he wished to use as collateral to the office of the company at Louisville, with the statement of some reputable attorney that there were no liens against the property except those mentioned in his letter,

and if the statement and collateral is satisfactory that they would make the loan.

On the 22d of March Smith wrote the company, inclosing the certificate of George H. Plowman, an attorney at Dallas, stating in effect, that the title to said property was good, and that the only incumbrance on said property was one note for $825, dated July 17, 1896, due July 7, 1901, bearing 8 per cent interest from date, which note is the first lien on the property, and the four notes above described, now held by the insurance company. Also Smith inclosed his affidavit, sworn to before a notary public on the 22d of March, 1897, which affidavit shows that the only incumbrance on the property was a note for $825 held by the investment corporation and the four notes which he had sent to the insurance company. Upon the receipt of these inclosures the insurance company loaned Frank J. Smith $1950, taking his note therefor, and taking the four notes of Sanders as collateral security for the same.

It is shown that Plowman, who gave the certificate to the insurance company, was a notary, and took the acknowledgment of Smith and wife to the deed to Sanders to lots 11 and 12 on March 18, 1895, and also took the acknowledgment of Sanders and wife to the bond for title. He was also the trustee in the original deed of trust given to secure the Sanders notes, and he had been Smith's attorney. He was also the trustee in the deed of trust securing the four notes held by the insurance company. It is not contended that the insurance company had knowledge of any facts that would put them upon inquiry, except through Plowman. The facts shown are insufficient to put the insurance company upon notice of any fact requiring them to make inquiry as to the ownership of the $1500 note at the time of the execution of the release by Frank J. Smith. The court did not err in instructing a verdict for the insurance company. Joske v. Irvine, supra.

Under the sixth assignment of error appellant complains of the action of the court in excluding the testimony of the appellant, that prior to the acquisition of the notes of said insurance company, she had informed George H. Plowman, who is trustee of the deed of trust securing the notes which said company acquired, and who investigated and reported upon the title for said company, that the $1500 note had been transferred to her in November, 1895, by Frank J. Smith, and that said Smith had afterwards and unknown to her and without her consent put the same up as a collateral for a loan to him in the Pilot Point National Bank; that she had the note and bond for title in her possession while talking to Plowman, and informed Plowman that she had heard that Smith had executed a release of said $1500 note on lots 11 and 12, and that if this was so, said release was in fraud of her rights and without her consent.

This evidence was excepted to by the insurance company because it was irrelevant and immaterial, and because neither at the time of said alleged conversation nor at any other time was said Plowman its agent. The court sustained the objection of the insurance company on the

ground that there was no evidence showing the agency of Plowman, and that in order for notice to the agent to be imputed to the principal, it must have been acquired by the agent while transacting the business of his principal, or while acting within the scope of such agency. The reason given by the trial court embraced the true rule. Kauffman v. Robey, 60 Texas, 308; Loan Agency v. Taylor, 88 Texas, 49.

Appellant's third assignment of error complains of the action of the court in instructing a verdict in favor of John Catto. Catto had acquired the lien which the homestead and loan association held against lot 9. In his pleading he set up his lien and the amount. The court instructed a verdict for said amount, and for foreclosure of the amount as the first lien on lot 9, block B914. In this there was no error. Appellant also complains that the judgment does not conform to the verdict. The court rendered a judgment upon the verdict as returned by the jury under the instruction of the court. Thereafter a motion was made by appellant to reform the judgment. The court did reform the judgment in certain particulars, in which it proceeded to adjust the equities between the parties. The judgment followed the verdict, but went further in adjusting the equities.

The facts being such that the judge was authorized to instruct a verdict, we see no reason why he could not proceed, after verdict, to adjust the equities between the parties.

We think that the proper judgment was rendered by the trial court, and finding no error in the record, the judgment is affirmed.

*Affirmed.*